**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

STC.UNM,

Plaintiff,

v.                                                          Civil No. 10-CV-01077-RB-WDS

INTEL CORPORATION,

Defendant.

**ORDER DENYING STC'S MOTION TO COMPEL**

This matter came before the Court on the Motion to Compel of Plaintiff STC. UNM ("STC"). (Doc. 54) The Court has considered the briefs submitted by the parties, oral argument of the parties, as well as supplemental briefs submitted in the nature of Plaintiff's Motion for Leave to File A Supplemental Submission (Doc. 95) and Defendant's opposition thereto. Having considered the matter and being otherwise fully advised, the Court finds the motion is not well taken and is denied.

As an initial matter, the Court wants to make it very clear that in this order it is making a discovery ruling, not a damages ruling. Any dispositive ruling on the damages that can or cannot be recovered in this matter is the responsibility of the presiding judge, and no such dispositive motion has been filed at this point in the case. However, the arguments for and against discovery of the material at issue in this motion, detailed below, depend in part on whether damages for lost royalties as a result of accelerated market entry are available to Plaintiff. In the Court's opinion such damages are not available, and that decision, while not the sole reason for the denial of Plaintiff's Motion to Compel, is a significant basis for the denial. Accordingly, this denial is without prejudice in the sense that if there is a subsequent decision by the presiding judge that such damages

are permissible, the Court will reconsider this discovery ruling.

This litigation involves Plaintiff's claim that Defendant has infringed its patent for a process called "double patterning." Double patterning is a process that allows for the manufacture of smaller, more powerful computer processor chips. Defendant Intel is the world's leading manufacturer of such chips. Plaintiff does not manufacture computer processors, but performs research and development in that field, then licenses its patents to manufacturers. The parties appear to agree that the infringement remedies available to a patent owner who makes and sells the patented product are an injunction and lost profits. The infringement remedy available to a patent owner who, like Plaintiff, licenses his patent, is the collection of royalties.

Plaintiff alleges infringement in connection with the process for manufacturing five different-sized Intel chips: 45 nanometer ("nm"), 32 nm, 22 nm, 14 nm, and 10 nm[1]. The parties have resolved their differences on discovery for the first three processes. The dispute in this motion regards the 14 nm and 10 nm processes. Defendant objected to Plaintiff's request for production of discovery relating to the 14 nm and 10 nm processes on two general grounds. The first was that neither processor will actually be marketed before September 2012, which is the date that STC's patent expires. Therefore, the information has no relevancy because royalties cannot be collected after the expiration of a patent. Second, Intel argues that even if there is some slight relevance, that relevance is outweighed by the fact that the 14 nm and 10 nm processes are in research and development, i.e., works in progress, and it would be overly burdensome to produce documentation now when the processes are likely to change multiple times before the product is marketed. Intel

---

[1] Plaintiff's brief in support of its Motion to Compel describes 15 nm and 11 nm processes. Defendant's brief states 14 nm and 10 nm. At oral argument, the parties referred to the latter, and the Court will use that terminology in this memorandum opinion and order.

also argues that any slight relevancy would be outweighed by the highly secret nature of the 14 nm and 10 nm processes, where any compromise of the security of the information would be catastrophic to Intel's future operations. Plaintiff responds that it is entitled to royalty damages under the theory of "accelerated market entry" and that production of research and development documents would not be overburdensome, and that it has made provisions for preserving the security of the 14 nm and 10 nm process documents, just as it has for the other three processes.

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Information sought is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Federal courts have held that the scope of discovery under Rule 26 is broad. *See Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995); *Sanchez v. Matta*, 229 F.R.D. 649, 654 (D.N.M. 2004)("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information."). The federal discovery rules reflect the courts' and Congress' recognition that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S. Ct. 385, 91 L. Ed. 451 (1947). As a result, Rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case." *Anaya v. CBS Broadcasting, Inc.*, 251 F.R.D. 645, 649-650 (D.N.M. 2007).

"Accelerated market entry" ("AME") is a recognized theory of damages in patent litigation. Damages awarded under AME represent compensation for lost sales after the patent's expiration based on defendant's entry into "the market at a level accelerated by its earlier infringement." *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 687 F. Supp. 134, 138 (S.D.N.Y. 1988). The basis

3

for the theory is the idea that an infringing manufacturer will build market share during the years of infringement, resulting in a higher market share at the time of the expiration of the patent than if sales were just starting on the date of expiration. For example, if the infringement started three years before expiration of the patent, and in that three year period the infringing manufacturer went from two or three percent market share to thirty percent market share at the time of expiration–with a corresponding decrease in the patentee's market share–the patentee could argue that the infringing manufacturer should only have had a two or three percent market share at the time of expiration. Damages under AME would be based on the patentee's proof that defendant's greater market share at the point of patent expiration reflected lesser market share for the patentee, and lost sales and profits as a result.

  Defendant argues that AME does not apply in this case because Plaintiff does not manufacture or sell products and cannot recover lost profits. Defendant notes that all AME cases involve manufacturers seeking lost profits from infringing manufacturers. Plaintiff argues that there are very few AME cases at all, and while it is true that they involve patentees who manufacture their own product, there is no reason why the theory should not apply equally to patentees who license their products and collect royalties from third party manufacturers. While it is true that infringing sales could decrease the post-expiration sales and profits of those third party manufacturers, the patentee's damages could only be the corresponding decrease in royalty from those decreased third party sales. The law is clear, however, that royalties are *not* paid after expiration of a patent. *Brulotte v. Thys Co.,* 379 U.S. 29, 32-33 (1964)(The use by a patentee of royalty agreements that project beyond the expiration date of the patent is unlawful per se). Accordingly, the Court sees no basis for a post-expiration claim of lost royalties, whether based on AME or otherwise.

  While the opinion above is sufficient to deny Plaintiff's Motion to Compel, the Court also

notes that it finds Defendant's other arguments persuasive.  There is no factual dispute that sale of the 14 nm and 10 nm processors will not start for some time following expiration of the patent.  The products are in research and development, and documents produced at great expense today may not accurately reflect the 14 nm and 10 nm processes ultimately used by Defendant several months or years down the line.  Finally, the Court takes very seriously Intel's concerns about the security of its products in research and development.  On the one hand, loss of the documents could be economically catastrophic to Intel.  On the other hand, the Court cannot at this time envision a scenario where Plaintiff could recover lost royalties for sales by Intel of chips manufactured with Plaintiff's 14 nm and 10 nm processes.  Accordingly, notwithstanding the broad scope of discovery under Rule 26, the Court finds that Plaintiff's Motion to Compel is not well taken.

    **IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel is hereby denied.

_____
**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**