# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

STC.UNM,

Plaintiff,

v.                                                            Civil No. 10-CV-01077-RB-WDS

INTEL CORPORATION,

Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS ON STC'S MOTION TO DISMISS INTEL'S AMENDED COUNTERCLAIM AND STRIKE INTEL'S AFFIRMATIVE DEFENSE FOR UNENFORCEABILITY

**THIS MATTER** comes before the Court on Plaintiff's Motion to Dismiss Intel's Amended Counterclaim and Strike Intel's Affirmative Defense for Unenforceability. (Doc. 45) The United States District Judge assigned to the case referred this matter to the undersigned for a recommended disposition. (Doc. 132) The Court, having reviewed the briefs and exhibits submitted by the parties, and being otherwise fully informed, recommends that the motion be denied.

STC.UNM ("STC") has filed a patent infringement complaint against Intel seeking royalties for the alleged practice of U.S. Patent No. 6,042,998 (the "'998 patent"). Intel denies infringement and asserts via counterclaims and affirmative defenses[1] that the '998 patent is invalid. Intel also alleges that the patentees and STC pursued deceptive tactics to obtain, preserve and strengthen the '998 patent, in violation of their obligations of candor to the United States Patent and Trademark Office. These tactics amount to "inequitable conduct" and form the basis for Intel's third counterclaim for declaratory relief

---

[1] Specifically, STC seeks dismissal of Intel's third counterclaim and fifth affirmative defense. For purposes of this report and recommendation, the Court will simply refer to Intel's "claims."

and corresponding affirmative defense.

STC has moved pursuant to Fed. R. Civ. Proc. 12(b)(6) to dismiss Intel's claims of inequitable conduct, arguing that Intel's claims, if taken as true, are insufficient to establish the materiality of the information allegedly withheld from, or misrepresented to, the Patent and Trademark Office. ("PTO") Intel argues that STC's motion to dismiss the claims should be denied because Intel has alleged detailed facts from which the Court can infer that (1) the inventors and their counsel hid material information from the PTO when they applied for the '998 patent, and (2) STC misled the PTO when it petitioned to backdate the '998 patent eight years after it issued.

## LEGAL STANDARD

It is axiomatic that on motion to dismiss, the Court must accept as true all factual allegations in the pleadings and view those allegations in the light most favorable to the non-moving party. *Begay v. Public Service Co. of New Mexico*, 710 F. Supp. 2d 1161, 1180 (D.N.M. 2010) (citing *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)).

A patent applicant engages in inequitable conduct when it breaches its duty of candor and good faith to the PTO. *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1233 (Fed. Cir. 2003). "Inequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Novo Nordisk Pharm., Inc. v. Bio-Tech. Gen. Corp.*, 424 F.3d 1347, 1359 (Fed. Cir. 2005) (quotation marks & citations omitted). At a minimum, "material" information is information that (1) "establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim," or (2) "refutes, or is inconsistent with, a position the applicant takes" in either asserting patentability or opposing an argument of unpatentablity. 37 C.F.R. § 1.56(b). More broadly, "material information" includes all information that a "reasonable examiner"

2

would consider to be important to the prosecution of the patent.  *See Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309, 1315-16 (Fed. Cir. 2006).

FACTUAL BACKGROUND

Two of STC's patents are relevant to this matter, the '321 patent (priority date: September 30, 1993; issue date: June 6, 1998) and the '998 patent (priority date: September 17, 1997; issue date: March 28, 2000).  There is a third patent involved, the '258 patent (priority date: April 29, 1994; issue date: June 4, 1996) in which STC has no ownership interest[2].  All three patents involve microprocessor technology at issue in this case.

The '998 applicants filed their application with the PTO on September 17, 1997.  That application did not claim to be derived from the '321, in whole or in part.  The PTO Examiner twice rejected the application as claiming the same invention as the '321 patent and as not novel in view of the '321 patent.  In response, the applicants argued that their invention was significantly different from anything disclosed or claimed in the '321 patent, and amended the '998 patent claims in an attempt to distinguish them from the '321 patent.  The PTO never resolved the applicants' arguments for patentability, however, because the applicants agreed to file a "Terminal Disclaimer."  In general terms, a terminal disclaimer states that a later patent will expire at the same time as the earlier patent, and that the later patent will be enforceable only if both the first and second patents remain commonly owned.  For example: Patent A is issued and later Patent B is issued to the same inventor with a terminal disclaimer attached.  Patent B will have the same expiration date as Patent A, even though it was filed later.

Significantly, although a terminal disclaimer synchronizes the termination dates of two

---

[2]Intel provided a timeline as an exhibit to its opposition, and the Court has attached that timeline to this report.

patents, it does not change or synchronize the priority dates of the patents.  After the applicants agreed to the terminal disclaimer, the '321 and '998 patents shared the '321 patent's termination date, but both retained their original priority dates.

In 2008 STC learned of the '258 patent, which, with a priority date of April 29, 2004, was "prior art" to the 1997 '998 patent but not prior art to the 1993 '321 patent.  STC filed a "certificate of correction" to change the priority date of the '998 patent to that of the '321 patent.  A certificate of correction is used to correct patent applicant mistakes of a "clerical" or "typographical" nature, or of "minor character."  See, 35 U.S.C. §255.  The correction was granted by the PTO.

ANALYSIS

It is undisputed that at the time STC submitted its certificate of correction in 2008, the priority date of the '998 patent was September 17, 1997.  There was no effort to change the '998 priority date to match the '321 priority date in 2000 when the PTO and the applicants entered into a terminal disclaimer.  In other words, this case does not present a situation in which the priority date for the '998 patent was changed, but the change was not documented by the PTO.  Accordingly, Intel argues that there was no "clerical" or "typographical" error, but rather a mistake of some substance.  Intel points out that there are two relevant ways a patent may claim a priority date of an earlier patent: "continuation" patents (where the child patent contains the identical disclosure as the parent patent) and "continuation-in-part" patents (where the child patent repeats a substantial portion of the disclosure of the parent patent, but also contains "new matter").  Intel argues that STC's use of the certificate of correction process rather than petitioning the PTO to correct the '998 patent to state that it was a continuation-in-part of the '321 patent is, in part[3], the inequitable conduct that supports

_____

[3]Intel also alleges that STC's non-disclosure of the May/June 1993 Brueck/Zaidi article supports there claims.  Given the Court's recommendation on the correction issue, it is not

4

their affirmative defense and counterclaim.

In their reply, STC argues that the "choice to use a certificate of correction to correct a claim to priority is itself so normal and appropriate that the PTO's own Manual of Patent Examining Procedures has an entire section devoted to explaining how it works."  The relevant section reads as follows:

> Where 35 U.S.C. 120 and 365(c) priority based on an international application is to be asserted or corrected in a patent via a Certificate of Correction, the following conditions must be satisfied:
>
> > (A) all requirements set forth in 37 CFR 1.78(a)(1) must have been met in the application which became the patent to be corrected;
> >
> > (B) it must be clear from the record of the patent and the parent application(s) that priority is appropriate (see MPEP § 201.11); and
> >
> > (C) the patentee must submit with the request for the certificate copies of documentation showing designation of states and any other information needed to make it clear from the record that the 35 U.S.C. 120 priority is appropriate. See MPEP § 201.13(b) as to the requirements for 35 U.S.C. 120 priority based on an international application.
>
> If all the above-stated conditions are satisfied, a Certificate of Correction can be used to amend the patent to make reference to a prior copending application, or to correct an incorrect reference to the prior copending application.

MPEP §1481.03 (attached as Exhibit 1 to STC's reply brief)

Assuming for the sake of argument that STC's characterization of the intent of this section is accurate, the Court's attention is drawn to the words "*If all the above-stated conditions are*

_____

necessary for the Court to discuss the article.

*satisfied*, a Certificate of Correction can be used to amend the patent. . ."  In considering this 12(b)(6) motion, however, the Court has no information regarding satisfaction of all of the conditions, and, to the contrary, must accept as true all factual allegations in the pleadings and view those allegations in the light most favorable to Intel.  In the Court's opinion there are numerous disputed facts, not to mention missing facts, at this early stage of the case.  The certificate of correction itself is not before the Court on this motion to dismiss under Rule 12(b)(6) and the Court does not know if, or how, the purported "clerical error" was described in the form.  In the Court's opinion at this point in the case, the failure to use a procedure to change a priority date is not a clerical error.  Intel alleges that characterizing such failure as a clerical error, rather than initiating a patent "reissue" proceeding constitutes inequitable conduct.  Implicit in Intel's allegations is the idea that such "reissue" proceedings would have been complicated or defeated by the existence of the intervening '258 patent.  As discovery proceeds, the Court expects that this factual matter will be resolved, but at this point the Court is bound to evaluate this motion assuming Intel's alleged facts to be true.

Furthermore, the Court is not aware of what was known, or not revealed, to the patent examiner when he issued the certificate of correction.  These factual issues prevent the Court from even starting the materiality analysis desired by STC.  In the Court's opinion the motion to dismiss is not well taken and should be denied without prejudice.  The issue may, of course, be revisited through an appropriately filed motion for summary judgment at a later time.

**NOTIFICATION**

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN (14) DAYS OF**

**SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written**

**objections with the Clerk of the District Court pursuant to 28 U.S.C. §636(b)(1). A party must file any**

**objections with the Clerk of the District Court within the fourteen (14) day period if that party wants**

**to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are**

**filed, no appellate review will be allowed.**

_____
**W. DANIEL SCHNEIDER**
**United States Magistrate Judge**