IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STC UNM,

   Plaintiff,

vs.                 No. 10-cv-1077 RB/WDS

INTEL CORPORATION,

   Defendant.

## MEMORANDUM OPINION AND ORDER

   This matter is before the court on Plaintiff STC UNM's Motion for Bifurcation and Early Trial on Damages (Doc. 145, filed September 27, 2011) and Memorandum filed in support thereof (Doc. 146, filed September 27, 2011). Jurisdiction arises under 28 U.S.C. § 1338. The issue has been fully briefed and is now ready for decision. Having considered the submissions and arguments of counsel, relevant law, and being otherwise fully advised, the Court **DENIES** Plaintiff's motion.

**I.  Background**

   This matter arises from Defendant Intel Corporation's ("Intel"'s) alleged infringement of patent rights[1] held by STC UNM ("STC"), the patent arm of the University of New Mexico, relating to photolithography techniques used in the manufacture of semiconductors. STC moves to bifurcate damages from liability and to conduct an early trial on damages prior to the mandatory settlement conference required by District of New Mexico Local Rule 16.2. In support of its motion, STC contends that an early bifurcated damage trial will enhance the

---

   [1]STC UNM is the owner-by-assignment of the alleged infringed patent entitled "Method and Apparatus for Extending Spatial Frequencies in Photolithography Images," United States Patent No. 6,042,998.

likelihood of early settlement, will save the parties time, money, and effort, and is within the discretion of the Court.  Intel responds that such "reverse bifurcation" is a "drastic and extraordinary procedure that has never been used in a patent case," (doc. 152 at 1), that it would not be efficient nor economical, that liability and damages issues will inevitably overlap, leading to duplicative presentation of evidence, and that it would be severely prejudicial to Intel because it would run the risk of juror confusion.

## II.     Discussion

Federal Rule of Civil Procedure 42(b) authorizes district courts to "order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims" where it would aid convenience, avoid prejudice, and expedite and economize case management.  FED. R. CIV. PROC. 42(b).  Bifurcation "is not to be routinely ordered" but may be "encouraged where experience has demonstrated its worth." Advisory Committee Note to 1966 Amendment.  Generally, the movant bears the burden of showing that separate trials are proper in light of the general principle that a single trial tends to reduce delay, expense and inconvenience.  *Belisle v. BNSF Ry. Co.*, 697 F. Supp. 2d 1233, 1250 (D. Kan. 2010).  "Bifurcation in patent cases, as in others, is the exception, not the rule."  *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000).

Reverse bifurcation of liability and damages is a sub-species of bifurcation most often employed in large, complex product liability cases. *See e.g.*, *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 473 n.8 (5th Cir. 1986) (" 'Reverse bifurcation' originated in the Third Circuit as a means of processing that circuit's backlog of asbestos-related cases."); *Nye v. Ingersoll Rand Co.*, 2011 WL 4017741 at *3 (D.N.J. Sept. 8, 2011) ("[W]hile so-called reverse bifurcation has found some favor in the area of complex personal injury torts, it remains relatively uncommon in

ordinary litigation.")  This procedure is most useful where the parties "have excellent information about the likelihood of success on the issue of liability and the real sticking points are the individual issues of causation and damages."  *Simon v. Philip Morris Inc.*, 200 F.R.D. 21, 32 (E.D.N.Y. 2001).  Although trial courts have significant discretion in determining whether to order bifurcation of liability and damages, courts abuse this discretion in ordering bifurcation that is unfair or prejudicial to a party.  *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993).  However, "[b]ifurcation is not an abuse of discretion if [the interests listed in Rule 42(b)] favor separation of issues and the issues are clearly separable."  *Id.*

The Court is unpersuaded that reverse bifurcation would further the interests expressed in Rule 42(b).  First, in regard to expedition and economy, STC argues that in contrast to a two-plus week liability trial, a damages trial would last only one to two days and would center primarily upon opinion testimony from each party's damages experts.  *Id.*  Thus, STC argues that in trying damages alone, "one sees a substantial savings of time, money, and effort . . . ."  Accepting these statements as true, STC still offers no rationale as to why damages should be determined *before* liability except that "[t]he outcome of such an abbreviated damage trial . . . would definitively inform each of the parties of the stakes in this case . . . [and] [t]he subsequent settlement conference would be held in an atmosphere of precise knowledge of damages."  *Id.* at 5.  STC therefore premises its contention that reverse bifurcation would save time and money on the assumption that a definitive damages calculation would facilitate early settlement.  STC asserts no other basis for reversing the ordinary progression of trial.

STC's reasoning is frankly too speculative at this point to justify ordering reverse bifurcation, a mechanism other courts have labeled "extraordinary" and "drastic."  *Nye*, 2011 WL 4017741 at *3 (citing cases).  Liability in this case is a hotly-contested issue and Intel has

continually maintained that it has numerous meritorious defenses to STC's claims. Although Intel certainly has an incentive to engage in posturing as to the extent of its confidence, at this point there is nothing to suggest Intel has any intention of abandoning its defenses. Further, STC appears to assume that a jury would find damages in a manner that creates actual pressure on the parties – and more likely, pressure on Intel – to settle. The Court does not see any credible foundation for this assumption. Finally, reverse bifurcation may be a more useful tool in cases where the cost to the parties of litigating a case significantly outweighs the case's overall value. Under those circumstances, an early damages determination may force all parties to re-evaluate whether a case is truly worth litigating. Here, by contrast, STC will seek damages of hundreds of millions of dollars, *see* doc. 146 at 2, whereas its estimated litigation costs are comparatively much smaller. (Doc. 146 at 3) ("In cases where the potential damages at issue exceed $25 million (as this case clearly does), the median litigation cost for each of the parties is $5.5 million.") The Court therefore finds no signficant reason why reverse bifurcation would facilitate early settlement in this case, and accordingly cannot find that reverse bifurcation would serve the interests of economy or efficiency.

     STC next contends that the liability and damages issues in this case are clearly separable, and that the damage issue here is limited to determining a "reasonable royalty" for the patent at issue. This royalty is calculated via "hypothetical negotiations" over licensing a patent that is presumed to be valid and infringed. (Doc. 146 at 6). Because the patent is "presumed" to be valid and infringed in the damages phase, STC argues that liability issues of validity and infringement are, by definition, separate. Intel focuses its response on the fact that evidence relevant to a damages determination will also be relevant to liability, leading to duplicative presentation of information.

When a court bifurcates a case, "[t]he Seventh Amendment requires that [it] . . . 'divide issues between separate trials in such a way that the same issue is not reexamined by different juries.' " *In re Paoli R.R. Yard PCB Litigation*, 113 F.3d 444, 452 n.5 (3d Cir. 1997) (citing *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995)). While Intel offers specific examples of evidence it contends would be duplicative, it does not identify specific *issues* that would be evaluated – and possibly perceived differently – by separate juries. Nor does it argue that certain factual determinations belonging to the liability portion of the trial are necessary precursors to a damages evaluation. However, the Court acknowledges that overlapping evidence may signal overlapping issues, and agrees that evidence relating to liability in this case may also be relevant to damages. As stated in *Real v. Bunn-O-Matic*,

> [T]he damages trial cannot be conducted in an evidentiary vacuum. A jury will have to be familiar with the patents at issue, the products, and the linear guide industry itself. Therefore, much of the evidence that can be expected to be introduced in a trial on damages will be duplicative of the evidence that can be expected to be presented in a trial on liability. If the case were bifurcated, it would be necessary to revisit the testimony and demonstrative evidence that previously had been used to explain to the liability jury, . . . It goes without saying that if proof overlaps substantially, the parties, the witnesses, and the Court would be inconvenienced by the presentation of the same evidence several times.

*Bunn-O-Matic*, 195 F.R.D. at 624 (citing *THK America, Inc. v. NSK Co. Ltd.*, 29 U.S.P.Q.2d 2020, 2024 (N.D. Ill. 1993). Although the Court does not determine at this point whether the issues are clearly separable, the potential for duplicative presentation of evidence further weighs against the interests of economy, efficiency, and convenience, and counsels against reverse bifurcation.

Finally, STC contends that far from prejudicing Intel, reverse bifurcation will help Intel avoid the imposition of a high damage award stemming from jury resentment over Intel's

repeated denials of liability should the jury find in favor of STC. (*See* Doc. 146 at 7) ("If the jurors . . . are even mildly convinced by the denial of culpability, they will resent the repeated, overstated denials as both dishonest and remorseless. Jury resentment is likely to augment the damages . . . .") (quoting Drury Stevenson, *Reverse Bifurcation*, 75 U. CIN. L. REV. 213, 219 (2006)). Intel counters that reverse bifurcation would be severely prejudicial because it raises substantial risk of juror confusion.

Although this is not a case where the jury will be required to determine liability and damages for a large assemblage of patents, the technological issues presented are sufficiently complex that a jury would likely benefit from the background and context established through the liability portion of the proceedings. The parties agree that the damages portion of the case will focus on determining the amount of a "reasonable royalty." Under patent law, "[a] 'reasonable royalty' derives from a hypothetical negotiation between the patentee and the infringer when the infringement began." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868 (Fed. Cir. 2010). Courts consider a wide variety of relevant factors in determining a reasonable royalty. *Id.* (referencing a "comprehensive" list of fifteen factors cited in *Georgia–Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y.1970)). These factors include considerations of "[t]he nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention"; "[t]he utility and advantages of the patent property over the old modes or devices"; and "[t]he established profitability of the product made under the patent; its commercial success; and its current popularity." *Georgia-Pacific Corp.*, 318 F. Supp. at 1120.

Again, the Court does not believe that these kinds of determinations can be made "in an evidentiary vacuum." *Bunn-O-Matic*, 195 F.R.D. at 624. A jury's comprehension of the *Georgia*

*Pacific* factors, the success with which it engages them, and its evaluation of an expert's credibility regarding them, may be enhanced through familiarity with the patented technology and accompanying infringement issues. As discussed above, were the Court to order reverse bifurcation, the background information necessary for the jury to fully understand the damages evidence may substantially overlap with liability and infringement evidence and result in duplicative presentation of evidence. Thus, the Court's interest in both economy and juror comprehension weighs against reverse bifurcation.[2]

In sum, the Court finds that reverse bifurcation of damages and liability would not further the interests of convenience, avoidance of prejudice, or the expedition and economization of case management.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff STC UNM's Motion for Bifurcation and Early Trial on Damages, Doc. 145, is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

---

[2] The Court takes no position at this point on the issue whether traditional bifurcation would prejudice either party.