## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

STC.UNM,

              Plaintiff,

    v.

INTEL CORPORATION,                 Civil No. 10-CV-01077-RB-WDS

              Defendant.

## STC.UNM'S RULE 19 MOTION TO CORRECT STANDING AND
## REQUEST FOR RECONSIDERATION

### I.    Introduction

Fed. R. Civ. P. 19 authorizes the Court to remedy the prudential standing issue under either Section (a) or Section (b). Rule 19(a) permits joinder of Sandia Corporation ("Sandia") as an involuntary plaintiff as a result of an agreement between STC and Sandia that makes STC the exclusive licensee of the jointly owned USP 6,042,998 ("the '998 patent"). Rule 19(b) empowers the Court, using its equitable powers, to proceed without adding Sandia as a party. As will be seen, this approach is the preferred one given Sandia's novel circumstances.

### II.    Factual Background

As set forth in Doc. 206, the dispute concerns technology arising out of the inventive contributions of four individual inventors, Brueck, Zaidi and Chu of UNM, and a Sandia inventor, Draper. Their contributions were combined in UNM docket number UNM-322 and Sandia docket number SD-5308. (Exhibit A). After the disclosure, STC began the patenting process by filing U.S. Patent Application Serial Number 08/123,543 ("SN/543"). While SN/543 was eventually abandoned, its content found its way into the later filed USP 5,705,321 ("the '321 patent") and the '998 patent.

With the patenting process, Sandia and UNM also started the process of obtaining title to the inventions from the DOE, which automatically obtained title pursuant to 42 USC § 5908. (Exhibit B; Bieg Declaration at ¶ 8). DOE granted UNM's title request for an "undivided interest" in the "invention", and, also, retained an "undivided joint ownership". (Exhibit C). Sandia then notified UNM it was requesting a "waiver of title", i.e. transfer of DOE's "undivided interest". Sandia also notified UNM that after obtaining title it would "enter into an agreement with UNM to allow UNM to be the exclusive licensing agent for the invention." (Exhibit D).

A Memorandum of Understanding ("MOU") was subsequently entered "regarding patenting, licensing, and royalty sharing of certain inventions and works of authorship that are jointly owned by Sandia and UNM." (Exhibit E, p. 1). The MOU provides for the designation of a Responsible Party that is to have the exclusive right to license, patent and protect a Subject Invention. The MOU calls for the designation to be memorialized in a Commercialization Agreement. (Exhibit E at ¶ 3). For UNM-322/SD-5308, a Commercialization Agreement ("CA") was executed designating STC as the party with the exclusive right to license and protect the intellectual property defined in the agreement. (Exhibit F).

III.    Standards

The Federal Circuit has stated, inter alia, that Rule 19(a) cannot be used to add an involuntary patent owner to an action unless the party seeking to avail itself of Rule 19(a) has been granted an exclusive license from the patent owner. *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1289 (Fed. Cir. 2008)(noting that "an exclusive licensee may join the patent owner as an involuntary plaintiff in an infringement suit" pursuant to Rule 19(a)). Thus, Rule 19(a) permits the joinder of Sandia if it is found that the MOU/CA make STC the exclusive licensee of the '998 patent. The Federal Circuit has also held that an infringement action may

proceed without adding a patent owner under the equitable considerations of Rule 19(b), the resolution of which is governed by the law of the regional circuit, here the Tenth Circuit. *A123 Sys. v. Hydro-Quebec*, 626 F.3d 1213, 1220 (Fed. Cir. 2010).

Sandia may be joined to this case under either section (a) or (b) of Rule 19. However, STC urges this Court to first consider allowing the action to proceed without Sandia pursuant Rule 19(b) given the unique nature of Sandia, which is for all practical purposes a quasi-governmental entity. For example, although Sandia is a private corporation, it acts more like a federal agency. The DOE funds it. The DOE controls it.  The DOE even allows Sandia to use DOE's Sandia National Laboratories trademark as a DBA to create the impression that Sandia is a federal agency.  Thus, to the extent possible, this Court should consider applying Rule 19(b) in the first instance given that adding Sandia in this manner, if permitted, avoids creating the public impression that the government is not neutral in this matter. In fact, Sandia has repeatedly told STC that it wants to remain neutral in this matter and it currently cannot do so. If it voluntarily joins the action, it creates the impression of favoring STC over Intel. If it refuses to join, it creates an impression of favoring Intel over STC.  Finding that Rule 19(b) applies gives Sandia the neutrality it wants, allows the action to be resolved on the merits, and without the need to determine whether STC obtained an exclusive license to the '998 patent as a result of the MOU and CA.

## IV.    Rule 19(a) Allows Sandia to be Joined as an Involuntary Plaintiff

Rule 19(a) empowers the Court to join Sandia as an involuntary plaintiff as a result of the CA it entered into that makes STC the exclusive licensee of the '998 patent. *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1289 (Fed. Cir. 2008). The CA designates STC as both the PATENTNG LEAD and LICENSING PARTY for the INTELLECTUAL PROPERTY.

As such, STC was given the exclusive right to license, patent and protect the intellectual property covered by the CA. (Exhibit F).

The "Intellectual Property" covered by the CA not only includes the '321 patent but also the technology originally disclosed by the inventors as well in UNM-322/SD-5308:

Intellectual Property:

1.   Technology was disclosed to STC on September 20, 1993 in SD-5308 (Sandia) /UNM-332 (STC)
U.S. Issued Patent No. 5,705,321 issued on January 6, 1998
Title: "*Method for Manufacture of Quantum Sized Periodic Structures in Si Materials*"
Inventors: Steven R.J. Brueck, Saleem H. Zaidi, An-Shyang Chu, and Bruce L. Draper

 (Exhibit F).

If the CA were intended to be limited to the '321 patent alone, there would have been no need to include the technology disclosed in UNM-322/SD-5308. The presence of this open-ended term clearly indicates that it was intended to act as catch-all that sweeps all patents originating from the "technology," into the CA, including the '998.

Confirming this point is the pattern of using open-ended terms referencing the intellectual property throughout the CA rather than the specific '321 patent. For example, the stated purpose of the CA is to define "each PARTY's responsibilities for commercializing the INTELLECTUAL PROPERTY (defined herein);" not for commercializing the '321 patent. The other major sections also use the term INTELLECTUAL PROPERTY instead of the '321 patent. In fact, there is only a single reference to the '321 patent in the CA and twelve references to INTELLECTUAL PROPERTY. (Exhibit F).

Nor is there any dispute that the '998 patent originates from the intellectual property disclosed in the technology of UNM-322/SD-5308. As acknowledged by the Court, the PTO

4

determined that the content found in the '998 patent is from the '321 patent which, in turn, originates from SN/543, which was born on the content disclosed in UNM-322/SD-5308. (Doc. 206, p. 14). As a result of a heritage all the way back to the technology disclosed in UNM-322/SD-5308, the '998 patent is covered by the CA.

The responsibility given to STC as the "PATENTING LEAD" confirms that the parties intended the CA to capture any patents issuing from the intellectual property by providing STC with the following authority with respect to the intellectual property covered:

Responsible Party:

1.   The PARTIES agree that STC, as the PATENTING LEAD, shall undertake all patenting and prosecution or other protection of the INTELLECTUAL PROPERTY.

(Exhibit F).

The terms "patenting," "prosecution" and "other protection" all describe future actions that may result in changes to the "INTELLECTUAL PROPERTY."  For example, patenting is the act of obtaining a patent. Prosecution is a broader term that includes any activity before a patent office. Protection is broader yet, and includes, among other things, obtaining rights as well as preventing the loss of rights.

The CA even calls for STC to be reimbursed for obtaining additional patents concerning the INTELLECTUAL PROPERTY:

2.   The PARTIES agree to reimburse the PATENTING LEAD, from LICENSING INCOME, patent costs of $20,000 as set out in the MOU for patent preparation and prosecution, plus all out-of-pocket fees paid to the USPTO.  Such out-of-pocket fees paid to the USPTO shall be evidenced by actual invoices for the filing and prosecution of any patent applications and the issuance and maintenance of any patents protecting the INTELLECTUAL PROPERTY and shall not exceed

(Exhibit F).

If the CA were limited to the '321 patent, there would be no need to include these forward-looking terms in the CA. Nor would there be a need to reimburse STC for any patents

added to the CA. The inclusion of these terms, in combination with the catch-all, evidences an intent to imbue the CA with the flexibility to cover future, even unanticipated, additions to the "Intellectual Property."

Thus, when Sandia was made a joint owner of the '998 patent, STC was indeed acting within the scope of the CA. STC was protecting one of the inventions originating from the technology of UNM-322/SD-5308. That doing so added the '998 patent to the CA, while unexpected, is certainly within the intent of the CA to cover later added patents.

Lastly, that Draper is not an inventor on the '998 patent does not exclude it. STC and Sandia understood that the Intellectual Property covered by the CA was a combination of intellectual property each considered to be entirely their own:

> Background:
>
> 1. One inventor (Draper) was an employee of SANDIA at the time of development of the INTELLECTUAL PROPERTY whose contributions to the INTELLECTUAL PROPERTY is considered to be entirely SANDIA.
>
> 2. Three inventors (Brueck, Zaidi and Chu) were employees of UNM at the time of development of the INTELLECTUAL PROPERTY whose contributions to the INTELLECTUAL PROPERTY are considered to be entirely STC.

(Exhibit F).

Finally, determining that CA covers the '998 patent is consistent with the intent of the parties as expressed by Sandia in its 1994 letter to UNM promising to make UNM the exclusive licensee of all of the inventions created:

> Dear Annabelle:
>
> Kurt Olsen referred this to me for response.  Sandia is proceeding with a waiver of title request with DOE.  Once Sandia receives title, Sandia will enter into an agreement with UNM to allow UNM to be the exclusive licensing agent for the invention.

(Exhibit D).

The CA is not limited to the '321 patent. It covers all patents originating from the inventions created by all four inventors, whether made individually, or together. That no one other than the Patent Office, until recently, recognized that the '998 patent was part of the inventions disclosed in UNM-322/SD-5308, and thus within the scope of the CA, does not foreclose the issue. The CA is imbued with the flexibility to cover unexpected changes that result in later additions to the intellectual property. Thus, for the reasons set forth above, STC respectfully requests that it be allowed to proceed with its claims against Intel by adding Sandia as an involuntary plaintiff as a result of the CA making STC the exclusive licensee of the jointly owned '998 patent.

## V.      The Equities Favor Applying Rule 19(b)

While Sandia may be joined under Rule 19(a), STC urges this Court to consider allowing the action to proceed without Sandia pursuant Rule 19(b) given the unique nature of Sandia which acts and functions more like a federal agency than a private independent corporation as set forth above. Finding that Rule 19(b) applies gives Sandia the neutrality it wants, allows the action to be resolved on the merits, and without the need to determine whether STC obtained an exclusive license to the '998 patent from Sandia, all of which satisfy the four factors that are weighed when considering Rule 19(b):

> As this Court has noted, if a necessary party cannot be joined, the inquiry turns to the second step under Rule 19(b), which provides: "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." FED. R. CIV. P. 19(b). Whether this test is satisfied depends on a weighing of four factors. Id. First, does the plaintiff have an alternative route by which to pursue its claim? Id. If not, that factor weighs against deeming the absent entity indispensable. Second, will the defendant be subject to multiple liability or other serious inconvenience? Id. If so, that factor weighs in favor of deeming the absent entity indispensable. Third, is there a serious danger that the absent entity will be harmed by the judgment rendered in its absence? Id. If so, that

> factor weighs in favor of deeming it indispensable. Fourth, what disposition will
> further the interest of the court and the public in consistent, expeditious, and
> efficient resolution of legal controversies? See FED. R. CIV. P. 19(b).

*Picuris Pueblo v. Oglebay Norton Co.,* 2005 U.S. Dist. LEXIS 8495, 5-6 (D.N.M. Apr. 4, 2005).

Here, the unique facts of this case make application of Rule 19(b) particularly compelling. First factor: does STC have an alternate route to pursue the infringement claim -- No.  This factor weighs in STC's favor. Second Factor: will Intel be subjected to multiple lawsuits -- No.  Sandia has made it clear it has no intention to pursue an action against Intel as confirmed by its statements to STC and by its refusal to join this action. Again, this factor weighs in STC's favor. Third factor: will Sandia be harmed by its absence from the suit -- No. Sandia's refusal to join in the suit clearly indicates that it has no interest in defending the validity of the patent or any interest in the outcome of the infringement issue. Fourth factor: the public interest favors STC. As noted by this Court, there is a strong public interest in having legal disputes resolved on the merits. This is especially true here since the standing issue is far removed form the merits of infringement and invalidity.

In fact, the issue was created by actions taken over a decade ago by those charged with protecting the inventions and not by any actions taken by the inventors themselves or concerning the quality of the inventions. Specifically, the attorney prosecuting the patents failed to recognize that Draper did not work for UNM when he allowed UNM to enter into the terminal disclaimer. If all inventors had the same employer, the pitfall STC now faces would not even be an issue. Moreover, as noted above, using Rule 19(b) as the means to allow this matter to go forward, allows Sandia to remain neutral – the very thing it wants. Thus, all four factors favor allowing the action to proceed without Sandia.

**VI.     The Court Should Reconsider Its Ruling Concerning the Ownership of the '998 Patent**

The Court should reconsider its decision that Sandia has not been the owner of the '998 patent since at least as earlier as December, 2008, if not earlier, as a result of the new evidence contained in the June 6, 2012 Declaration of Kevin Bieg. (Exhibit B). The declaration, which was filed in response to the Court's request to answer the questions as to the ownership of the '321 patent, establishes that the Department of Energy ("DOE") automatically took title to all of the inventions created by the inventors under the automatic vesting provisions of the Atomic Energy Act. The DOE subsequently granted title to both Sandia and UNM/STC, thus establishing joint ownership to an undivided interest to all of the inventions. That both the '998 and '321 patent originate from the inventions results in there being joint ownership between Sandia and STC in both patents from the start. Whatever rights Draper had or did not have to assign to STC in 1996, do not matter. As a matter of law, the Atomic Energy Act trumped.

9

Dated: June 13, 2012                     Respectfully submitted,

                                         /s/ Keith A. Vogt
Deron B. Knoner                          Rolf O. Stadheim
KELEHER & MCLEOD, P.A                     Joseph A. Grear
201 Third Street NW, 12th Floor          George C. Summerfield
PO Box AA                                Keith A. Vogt
Albuquerque, New Mexico 87103            Steven R. Pedersen
(505) 346-4646                           STADHEIM & GREAR, LTD.
                                         400 N. Michigan Avenue, Suite 2200
                                         Chicago, Illinois 60611
                                         (312) 755-4400

                                         Raúl A. Carrillo Jr.
                                         CARILLO LAW FIRM, P.C.
                                         937 East Lohman
                                         Las Cruces, New Mexico 88001
                                         (575) 647-3200

                     *Attorneys for Plaintiff STC.UNM*


**Certificate of Service:** I hereby certify that on June 13, 2012, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

In addition, I have caused a courtesy copy to be sent to the following parties via Email & First Class Mail:

Kevin W. Bieg, Senior Attorney           Luis G. Stelzner
Sandia National Laboratories             Stelzner, Winter, Warburton,
Org. 11500, MS0161                       Flores, Sanchez & Dawes, P.A.
P.O. Box 5800                            302 8th Street NW, Suite 200
Albuquerque, NM 87185-0161               Albuquerque, New Mexico  87102


                                         /s/ Keith A. Vogt
                                         Keith A. Vogt
                                         STADHEIM & GREAR, LTD.