## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

STC.UNM,

              **Plaintiff,**

    **v.**

INTEL CORPORATION,                    Civil No. 10-CV-01077-RB-WDS

              **Defendant.**

## STC.UNM'S REPLY IN SUPPORT OF ITS MOTION TO CORRECT STANDING AND REQUEST FOR RECONSIDERATION

### I.  Rule 19(a) Applies

Sandia and Intel claim that Rule 19(a) is inapplicable because the '998 patent is not covered by the Commercialization Agreement and, even if covered, the Commercialization Agreement does not provide the necessary exclusive license needed.  They are wrong.

### A.  The Commercialization Agreement Covers all Inventions Created by Inventors Not Just the '321 Patent

Two competing interpretations of the Commercialization Agreement have been presented. STC's interpretation includes all of the inventors' inventions. This makes practical sense. A potential commercial partner typically requires a license to all of the related intellectual property so as to avoid investing in one only to learn later that another license is needed to related technology. This includes all forms of intellectual property, such trade secrets, patent applications and patents.

Sandia's and Intel's interpretation, on the other hand, is impractical. It divides the inventions piecemeal by only including the '321 patent to the exclusion of any other intellectual

property originating out of the inventive work of the inventors as disclosed in the UNM-322/SD-5308 Technical Disclosure (the "Technical Disclosure").

That the Commercialization Agreement was intended to cover all of the inventions, in any form, is demonstrated by the use of term "INTELLECTUAL PROPERTY" throughout the agreement. As to what was meant by this term, it is defined with a broad, inclusive term -- the original technology disclosed on September 20, 1993 in UNM-322/SD-5308:

Intellectual Property:

   1.   Technology was disclosed to STC on September 20, 1993 in SD-5308 (Sandia) / UNM-322 (STC)
        U.S Issued Patent No. 5,705,321 issued on January 6, 1998
        Title: *"Method for Manufacture of Quantum Sized Periodic Structures in Si Materials"*
        Inventors: Steven R.J. Brueck, Saleem H. Zaidi, An-Shyang Chu, and Bruce L. Draper.

(Doc. 218-6 at 2).

The technology disclosed and referenced as docket number UNM-322/SD-5308 is not even a patent. It is a separate document which is the inventors' original Technical Disclosure. (see Doc. 218-1). As such, it is the parent of any later filed patent applications, issued patents and the foundation for any other intellectual property. It was not a mistake for the drafters to reference the Technical Disclosure on three occasions and use the term "Intellectual Property" repeatedly, while only mentioning the '321 patent once. It was intentional because the agreement was intended to cover all of the inventions in all forms; not just those found in the '321 patent.

To avoid this expressed intent to cover all of the inventions, in all forms, Sandia and Intel argue that the '998 must be excluded since it is not specifically referenced and that there was no specific Commercialization Agreement for the '998 patent.  Intel further argues that this point is driven home by docket number UNM-322 being assigned to the Technical Disclosure and UNM-422 being assigned to the '998 patent. (Doc. 226 at 10).

Yet, an examination of docket numbers actually supports STC's position. Intel correctly points out that the Technical Disclosure is docketed as UNM-322. While Sandia Exhibit A (Doc. 229 at 3) confirms that the '321 patent is docketed as UNM-322.CON. Again, the use of separate docket numbers to identify separate documents reaffirms that two different pieces of intellectual property are covered; the broader, parental disclosure of UNM-322 and its child, the '321 patent of UNM-322.CON.

That the '998 patent is being made part of the family as a continuation-in-part of the UNM-322 family post execution of the agreement does not violate the intent of the agreement – it comports with it. As the designated PATENTING LEAD, STC was charged with the responsibility to "undertake all patenting and prosecution or other protection of the INTELECTUALL PROPERTY." None of these terms look backwards; all look forward to future actions that may change the defined INTELLECTUAL PROPERTY.

Moreover, providing the PATENTING LEAD with the ability to add to the INTELLECTUAL PROPERTY makes practical sense in the world of intellectual property.  For example, as noted by the Court, intellectual property rights are routinely perfected over the course of many years, such as through the filing of multiple continuations. (Doc. 206 at 13). Providing the PATENTING LEAD with the ability to take future actions that may result in additions or changes to the INTELLECTUAL PROPERTY was clearly contemplated.

To avoid this problematic language, especially the term "patenting," Sandia pretends it does not exist and never explains what this language means. For its part, Intel ignores it through misdirection by claiming that the '998 patent and the UNM-322 family of inventions covered by the Commercialization Agreement are "distinct and substantially different…" (Doc. 226 at 12, line 2). Of course, the Patent Office found otherwise when it subjected the '998 patent to a

terminal disclaimer based on a finding that it and the '321 patent disclosed identical inventions. (Doc. 206 at 4, and 14).

The inclusion of broadly worded, forward looking language describing the duties of the PATENTING LEAD charged STC with the responsibility of "protecting the INTELECTUAL PROPERTY."  Thus when STC added the '998 patent to the mix, it was acting pursuant to the Commercialization Agreement by protecting the patent.

Nor do the issues of Draper's inventorship and Sandia's ownership call for a different conclusion. The scope of the INTELLECTUAL PROPERTY covered was not dependent upon there being joint inventorship and ownership on each and every invention created by the individual inventors as Intel and Sandia contend. Dividing the intellectual property in this piecemeal fashion is impractical. Again, if one of the inventions was solely invented by Draper and solely owned by Sandia, a potential commercial partner would not receive complete rights to the technology since such rights would be outside the scope of the agreement under the interpretation urged by Sandia and Intel.

The Commercialization Agreement implements a practical solution. It combines all of the inventions, even those entirely owned individually by Sandia and UNM, into the INTELLECTUAL PROPERTY:

> Background:
>
> 1.   One inventor (Draper) was an employee of SANDIA at the time of development of the INTELLECTUAL PROPERTY whose contributions to the INTELLECTUAL PROPERTY is considered to be entirely SANDIA.
>
> 2.   Three inventors (Brueck, Zaidi and Chu) were employees of UNM at the time of development of the INTELLECTUAL PROPERTY whose contributions to the INTELLECTUAL PROPERTY are considered to be entirely STC.

(Doc. 218-6 at 2).

Even the original Technical Disclosure acknowledges that each party was making individual contributions to the whole:

> Support:  Support for the UNM portion of this work was provided by the Air Force Office of Scientific Research, support for the SNL portion (?)

(Doc. 218-1 at 5).

The Commercialization Agreement was drafted to cover all of the inventions of the individual inventors as a combined whole. This combination includes the original inventions of Drs. Brueck and Zaidi, which are found in both the '321 patent and the '998 patent as determined by the Patent Office. Any attempt to interpret the Commercialization Agreement as covering only inventions which meet the exclusive criteria of joint inventorship, joint ownership, and patented in the '321 patent, to the exclusion of other inventions is an impermissible rewrite that offends the expressed intent of the agreement. It also ignores the practical. STC was charged with the responsibility of commercializing the "INTELLECTUAL PROPERTY." To effectively do so, it needed all of the INTELLECTUAL PROPERTY, not just a very select portion of it.

**B.  STC's Designation as the Exclusive Licensing Agent Provides the Licensing Rights Needed to Satisfy Rule 19(a)**

Sandia and Intel also argue they have a fallback position even if the '998 patent is covered by the Commercialization Agreement. They claim the exception created by *Independent Wireless* does not apply because the STC/Sandia relationship was not the traditional patent owner/non-owner relationship and the term "Licensing Agent" is used in the Commercialization Agreement rather than "exclusive licensee." Again, this misses the mark.

Where the parties stood prior to the creation of their relationship and the labels used are not determinative. It is where the parties stand after entering into their agreement and the rights for which consideration was paid that matter.

5

As noted by the Court in *Independent Wireless Tel. Co. v. Radio Corp of America,* 269 U.S. 459 (1926), the inequity to be corrected arises from a party providing consideration to another for the exclusive right to enforce a patent. Then having those rights frustrated by the other party's refusal to join in an enforcement action. *Id*. at 469.

This is the inequality that has arisen here. STC provided consideration to Sandia in exchange for STC receiving the exclusive right to license the INTELLECTUAL PROPERTY, at its own expense and effort – a point Sandia does not dispute. The consideration was that Sandia received a portion of any LICENSING INCOME. (Doc. 218-6 at 2).

This includes the right to bring enforcement actions and to grant non-exclusive licenses; again a right Sandia concedes STC possesses as the LICENSING PARTY. Yet, Sandia now seeks to frustrate the bargain it made even though STC has done exactly what the parties contemplated when the Commercialization Agreement was executed.

Moreover, even the passage of *Independent Wireless* quoted by Intel supports STC. The passage states that the holding applies to an "owner of a patent, who grants to another the exclusive right to make, use or vend the invention..." (Doc. 226 at 14). Noticeably absent is any requirement that the grant must be from a patent owner to a non-owner as Sandia and Intel claim. The precise wording is to "another" which covers the present situation.  Moreover, as *Independent Wireless* noted, the party with the right to license also has the right to bring enforcement actions.

In short, Rule 19(a) applies in this instance.

## II.  Even If Rule 19(a) Does Not Apply, Rule 19(b) Applies

The equitable considerations set forth in Rule 19(b) call for moving forward without Sandia. As initial matter, Sandia has not opposed the application of Rule 19(b). Thus, the laundry

list of "harms" Intel speculates may befall Sandia should be disregarded. If Sandia thought it would be harmed in anyway by the action moving forward without it, it certainly would have said something given that it has demonstrated the ability to protect its interests.

Thus, of the factors to be weighed, the Court is left to consider the possible prejudice to STC and Intel. Again, the prejudice to STC is obvious. A dismissal leaves it with no means to have the action resolved on the merits.

As to Intel, it claims it is exposed to the threat of a suit by Sandia. (Doc. 226 at 19). This ignores reality. Sandia has had multiple opportunities to join the action. It has refused to do so at every juncture.

Sandia has even informed STC that the DOE has instructed it to take no action in the matter and to remain neutral. (Exhibit A; Fulghum Declaration at ¶ 3). Not only does this rebut Intel's apprehension about future suits from Sandia, it also rebuts Intel's claim that STC could have corrected the problem it faces by cutting a deal with the Sandia but it was too cheap to do so. (Doc. 226 at 2).

Finally, Intel's fear of multiple suits omits an inconvenient truth – the other owner would lack standing to bring a suit on its own. i.e., Sandia could not sue without STC. The only harm to Intel here is that it would have to address resolving the suit on the merits, which is not a reason for denying the application of Rule 19(b). Accordingly, Rule 19(b) applies.

## III.  STC's Motion For Reconsideration Was Timely and Should Be Considered

Intel argues STC's motion should not be reconsidered because it is not based on new evidence. Specifically, Intel claims STC had the opportunity to question Mr. Bieg on the issues at his November 17, 2011 deposition. Not true.  At the time of the deposition, the terminal

disclaimer defense was not even in the case. Intel added the defense on December 7, 2011 by amending its counterclaims. (Doc. 162).

Lastly, both Intel or Sandia fail to address Bieg Deposition Exhibit 93 which confirms that title to the inventions disclosed in UNM-322 originally vested in DOE. (Doc. 218-3). In response to UNM's request to receive title, DOE did granted title to UNM but retained an undivided interest. *Id*. DOE's retained interest was then transferred to Sandia. (Doc. 218-4). Nor is it disputed that the Patent Office found that that the inventions of the '998 are identical to those of the '321 patent which arises from the Technical Disclosure of UNM-322. That both patents arise from UNM-322 makes both Sandia and STC co-owners of the '321 and '998 patents by virtue of receiving from DOE, the original title holder, an equal undivided interest to the inventions.

Dated: August 3, 2012                                  Respectfully submitted,

                                                       /s/ *Keith A. Vogt*
Deron B. Knoner                                        Keith A. Vogt
KELEHER & MCLEOD, P.A.                                 Rolf O. Stadheim
201 Third Street NW, 12th Floor                        Joseph A. Grear
PO Box AA                                              George C. Summerfield
Albuquerque, New Mexico 87103                          Steven R. Pedersen
(505) 346-4646                                         STADHEIM & GREAR, LTD.
                                                       400 N. Michigan Avenue, Suite 2200
                                                       Chicago, Illinois 60611
                                                       (312) 755-4400

                                                       Raúl A. Carrillo Jr.
                                                       CARILLO LAW FIRM, P.C.
                                                       937 East Lohman
                                                       Las Cruces, New Mexico 88001
                                                       (575) 647-3200

                                                       *Attorneys for Plaintiff STC.UNM*

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2012, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

/s/ *Keith A. Vogt*
Keith A. Vogt
STADHEIM & GREAR, LTD
